### (C. D. 217)

Max Littwitz, Inc. *v.* United States

United States Customs Court, Second Division

(Decided October 3, 1939)

Brooks & Brooks (Ernest F. A. Place of counsel) for the plaintiff.
Webster J. Oliver, Assistant Attorney General (Richard H. Welsh, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges.

TILSON, Judge: The question involved in the suits against the United States listed in schedules A, B, C, and X, hereto attached and made a part hereof, is the proper classification of various articles and certain so-called Venice laces upon which duty was levied at 90 per centum under paragraph 1430 of the Tariff Act of 1922. Plaintiff claims the same to be properly dutiable at 75 per centum ad valorem under the latter part of the same paragraph as embroideries or embroidered articles.

As to the items of merchandise listed on schedules A, B, and C there appears to be no contest, in fact it was in effect agreed between the respective counsel that said items were similar in all material respects to the merchandise the classification of which was involved in T. D. 47065, T. D. 41396, and Protest 62864–G, and the records in said cases have been admitted in evidence herein.

On the record thus presented as to the items of merchandise listed in said schedules A, B, and C, we hold said items to be properly dutiable at 75 per centum ad valorem under the latter part of paragraph 1430 of the Tariff Act of 1922, as claimed by the plaintiff.

The question as to the proper classification of the items listed in said schedule X is more serious and not so easy to determine. These items involve the so-called Venice laces, as to which there appears to have been no former decision directed to this specific merchandise.

At the trial of this case plaintiff offered the following exhibits:

Exhibit 1, consisting of a Venice mat 13 x 18 inches.

Exhibit 2, a tablecloth received in evidence to illustrate a flat needle-point Venice lace.

Exhibits 3, 4, and 5 are schedules of items of merchandise, the classification of which has heretofore been determined.

Collective Exhibit 6 is the deposition of Paul Michel Stokvis, the manufacturer of the imported merchandise listed in said schedule X.

Collective Exhibit 6–A consists of a typewritten transcription of Collective Exhibit 6.

Exhibit 7 is a sample of item No. 9653 on entry 836447, suit 398991–G.

Exhibit 8 consists of a schedule of the items on the invoices in which the work is the same as Exhibits 1 and 7.

Illustrative Exhibit A is a doily which it is contended is a sample of typical Point de France lace.

The defendant offered in evidence Illustrative Exhibit C which it is contended represents a lace Venice buttonhole stitch, and Illustrative Exhibit D, which it is contended represents an embroidery buttonhole stitch.

All of said exhibits are now before us and have had our careful inspection, examination, and consideration.

As to the different steps employed in the manufacture of this so-called Venice lace, we quote the following from the deposition of the man who actually produced the lace:

There are four different operations for the fabrication of such lace:
(1) the tracing of the design;
(2) the filling of the design;
(3) the joining of the different parts by barrets;
(4) the embroidering made by buttonhole stitch, which refers specifically to the type of Venice lace of Item No. 11649.

When asked to explain the significance of the terms "Flat Needle-point Venice lace" and "Relief Venice lace," the witness stated that "Flat Needle-point Venice lace" is made without any relief and that "Relief Venice lace" has some parts outlined by buttonhole stitch. The witness further stated that the contrasting characteristics of the two types of Venice lace are that the manufacture of the Flat Needle-point Venice lace requires only three operations indicated, to wit, the tracing of the design, the filling of the design, and the joining of the different parts by barrets, while the manufacture of Relief Venice lace requires the embroidering made by buttonhole stitch.

Further explaining the operation of making or producing Venice lace, the witness stated that flat Venice lace can be converted into relief Venice lace by adding a part of work in buttonhole stitch on top of the existing lace, for instance, to outline some details like flowers, leaves, bird's wings, and so forth. In the same way relief Venice lace can be converted into flat needle-point Venice lace by removing the same details from the relief Venice lace, and that the article so remaining after the removal of the relief work is a lace, a merchantable and salable article of commerce. The material which causes the flat Venice lace to be characterized as relief Venice lace can be removed without destroying the physical integrity of the article as a lace.

As a basis for the evidence set out above the witness stated that he had been general manager of the firm of R. Lava & Co., the exporter in this case, since October 1910, and that he had been a partner of that firm since February 1, 1915; that he had always supervised the manufacture of laces in his own business, taking a general control of the

work in different parts of Belgium where they have lacework girls; that he had been elected by the other manufacturers as president of the "Chambre Syndicale des Dentelles de Belgique"; that he had been appointed by the Belgian Government as a member of the technical committee of the New York World's Fair, 1939, and that he was charged by the Belgian Government with the control of all laces ordered by it for the Belgian section of the Paris Exposition of 1937. With particular reference to Venice laces he stated that he supervised the technical part of the designing and manufacturing of the large Venice lace panel which was exhibited by the Belgian Government in the "Salon d'Honneur" at the Paris Exposition.

As evidence of the fact that Venice lace, that is, Venice lace without the relief work being applied thereto, is a merchantable and salable article of commerce, we have in evidence a tablecloth, complete in every detail. Counsel for the defendant, in effect, concedes that this tablecloth illustrates a flat needle-point Venice lace. This tablecloth is marked Illustrative Exhibit 2.

In order to apply the relief work to a flat Venice lace an underlay or cordonnet is necessary. This consists of a thread or set of threads which are stitched on over and over with a buttonhole stitch, so laid and arranged upon the flat Venice lace as to form flowers, leaves, bird's wings, and other figures or designs. The buttonhole stitch serves to fasten the heavier thread or threads over which they are made to the foundation fabric of flat Venice lace. The article resulting from the application of this relief work to the flat Venice lace is known as relief Venice lace, and, as heretofore stated, when this relief work is removed there remains nothing more nor less than a flat Venice lace, complete in every detail.

Two well-qualified witnesses testified for the defendant in this case. One of these witnesses, Miss Powys, when asked if there was any embroidery on Exhibits 1 and 7 and Illustrative Exhibit A, answered as follows:

In my opinion, the heavy raised cordonnet which is embroidered, or buttonhole stitched to this lace, finished and completed the lace.

To illustrate the evasiveness and lack of definiteness on the part of Miss Powys, the following is quoted from the record:

Q. Is it, or is it not, in your opinion, embroidery?—A. I think the stitches are called in many books, embroideries. They are buttonhole stitched over the heavy relief, in order to finish the lace.

Q. You still haven't answered my question. In your opinion, is it or is it not, embroidery?—A. In my opinion, embroidery as such is something on a finished fabric. In this case, it is on lace, and lace being made with a thread in the air, is not a fabric.

Q. Based upon that, would you say it was embroidery?—A. I would say that it is a stitch that is often called an embroidery stitch—the buttonholed stitch over the cordonnet which is finished, the flat Venice completing the work.

Q. Miss Powys, please listen carefully. Will you please look at Exhibit 1, and state, in your opinion as an expert, whether or not there is any embroidery on those Exhibits?—A. I would say it is an in the air stitch, but that is also sometimes used in embroidery.

This same witness definitely and positively denied that lace was a fabric of any kind, but finally admitted that if a cordonnet or heavy thread were bound to a woven fabric with closely formed buttonhole stitches, such as appear on Exhibit 1, the resulting work would be embroidery. However, she gave no explanation as to why the cordonnet or heavy thread which was bound to Exhibit 1 with closely formed buttonhole stitches was not embroidery, other than to say that the flat Venice lace upon which it was placed was not a fabric of any kind, and her further contention that such work would be a lacemaking operation. This witness finally admitted that if the cordonnets or heavy threads were removed from Exhibit 1 there would be left an integral piece of lace, although she insisted it would be a "pretty poor one." This does not accord with the testimony of other witnesses in this case.

An examination of the exhibits establishes that it is quite possible to remove any number of cordonnets or heavy threads which produce the forms, figures, or designs without in any way destroying or even mutilating the original flat Venice lace, and that it was not necessary that this embroidery should be added in order to complete the flat Venice lace.

It is true that after the relief work has been applied to the flat Venice lace it is no longer a flat Venice lace, but a relief Venice lace. Likewise in the case of *United States* v. *Caesar*, 18 C. C. P. A. 106, T. D. 44067, the lace there involved before the cords were attached was known as a shadow lace, and after the cords were attached it was no longer known as a shadow lace, but was known as Alençon lace. Again in the case of *United States* v. *Ramig*, 17 C. C. P. A. 365, T. D. 43809, the merchandise there, prior to the application of the embroidery, was nothing more nor less than a piece of plain net. After the embroidery was applied it was no longer known as a plain net, but was known as embroidered flouncings, and so held by both this and the appellate court.

It was long our understanding that the dutiable status of imported merchandise had to be determined in the condition in which the merchandise was imported, but under recent rulings of the appellate court it now appears with reference to embroidered laces that the embroidery must be removed in order to determine whether or not the remaining fabric is a lace, and we are therefore considering this case on that theory. In the case of *Jabara* v. *United States*, T. D. 46574, we made the following observations:

Counsel for the defendant, in his reply brief filed herein, contends that the embroidery on the edges of the articles in question is not embroidery and that it is nothing more than a finishing process to keep the edges from unknotting and unravelling. Aside from the testimony of plaintiffs' witnesses that these edges are embroidered, and that the embroidery is not placed thereon for the purpose of keeping the edges from unknotting and unravelling, an examination of the samples in evidence conclusively establishes that with this embroidery removed from these edges they are still fast and complete edges in and of themselves, and that it is not necessary that this embroidery should be added to keep the edges from unknotting or unravelling.

In affirming the above decision the appellate court, in *United States* v. *Jabara,* 22 C. C. P. A. 77, T. D. 47065, said:

We think the weight of the evidence supports the foregoing conclusion of the Customs Court that said buttonhole stitch is embroidery, and, this being true, we are clear that the articles here involved are embroidered lace articles, dutiable at 75 per centum ad valorem, as held by the trial court.

It is the contention of counsel for the defendant that the relief work which is applied to the flat Venice lace is not embroidery, but that it is part of the structure of the material. This contention prompts us to refer again to the embroidered flouncing in the *Ramig* case, *supra.* Prior to the application of the embroidery in that case the only fabric or article that existed was a piece of plain net. This piece of plain net was introduced into a machine which embroidered certain patterns upon this piece of plain net. After this embroidery was placed upon the piece of plain net it was no longer a piece of plain net. It was an embroidered flouncing, an entirely different article from a piece of plain net.

In the instant case in producing relief Venice lace it is necessary first to produce flat Venice lace, a commercially salable lace article. Thereafter, certain patterns are embroidered upon this piece of plain flat Venice lace. After this embroidery is placed upon the plain flat Venice lace it is no longer a piece of flat Venice lace. It is a relief Venice lace, an entirely different article to a flat Venice lace. It should be noted that at no time since the rendition of the opinion in the *Ramig* case, *supra,* has the appellate court modified or reversed in any particular any of the holdings made therein. Particularly applicable to the question here presented is the decision of the appellate court in the *Caesar* case, *supra,* which decision has not been modified or reversed in any particular. If the application of the cord to the shadow lace in the *Caesar* case which produced Alençon lace was, as held by this and the appellate court, embroidery, and not lace making, then it clearly appears that the application of the cord or threads to the flat Venice lace in this case which produced relief Venice lace is embroidery and not a lace-making operation.

The methods employed in, and the results obtained by the application of the cordonnet or heavy threads to the flat Venice lace fully answer all the definitions of embroidery adopted and followed by this and the appellate court. The work is done with a needle and produces raised and ornamental designs in threads of silk, cotton, gold, silver, or other material upon an otherwise completed fabric. In view of the numerous decisions holding lace to be embroidered, and the fact that embroidery is the application by needle and thread of ornamental forms, figures, or designs upon an otherwise completed fabric, we do not take seriously the contention or opinion of Miss Powys that lace is not a fabric. If this were true, then it would appear that there have been numerous erroneous decisions by this court, as well as by the appellate court. If in this we be in error, we prefer to leave to the higher court the reversal and explanation of the long line of decisions holding otherwise.

It is true that the lace in this case was not an otherwise completed fabric, in that it was a complete relief Venice lace prior to the application thereto of the cordonnet or heavy threads, but neither was the shadow lace in the *Caesar* case, *supra*, an otherwise completed fabric, in that it was a complete Alençon lace prior to the application thereto of the cords which was held to constitute embroidery. The same is true of the original piece of net in the *Ramig* case, *supra*. Nevertheless in each of said cases the merchandise was held to be embroidered, which, of necessity, was a holding that that to which the threads were applied was an otherwise completed fabric, prior to the application thereto of such threads.

On the entire record, after a careful consideration thereof, including the exhibits before us, we hold that the flat Venice lace, prior to the application thereto of the cordonnet or heavy threads, was an otherwise completed fabric; that the so-called relief work which was applied to the flat Venice lace by means of a needle and thread produced forms, figures, and designs which were ornamental in character and rise to the dignity of embroidery, as that term has been so often defined by the courts, and that the work thus applied converted the flat Venice lace into a relief Venice lace, embroidered, although at the same time it also converted the flat Venice lace into what is known as relief Venice lace.

We, therefore, hold the items of merchandise listed upon said schedule X to be properly dutiable at 75 per centum ad valorem under the latter part of paragraph 1430 of the Tariff Act of 1922, as claimed by the plaintiff.

To the extent indicated the specified claims in said suits are sustained; in all other respects and as to all other merchandise all the claims are overruled. Judgment will be rendered accordingly.